# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 12-20662-CIV-GOODMAN

### [CONSENT CASE]

THOMAS FRASCA,

      Plaintiff,

v.

NCL (BAHAMAS) LTD., et al.,

      Defendants.

_____/

## ORDER ON DEFENSE DISCOVERY MOTIONS

On June 10, 2013, the Court held a hearing on Defendants NCL (Bahamas) Ltd., Norwegian Cruise Line, and NCL America's (collectively "NCL") Motion for Reconsideration and NCL (Bahamas) Ltd.'s ("NCL-Bahamas") Motion to Compel Executed Interrogatories and Execution of Authorizations for Disclosure of Protected Health Information. [ECF Nos. 80; 85].[1]

## I.   NCL's Reconsideration Motion

In its reconsideration motion, NCL asks the Court to reconsider its Order [ECF No. 71] granting (in small part) and denying (in large part) Plaintiff Thomas Frasca's ("Frasca") Motion for Protective Order. That Order denied Frasca's requests to: (1) have

_____

[1] For reasons unknown, the Motion for Reconsideration was filed by all Defendants, while the Motion to Compel was filed only by NCL-Bahamas.

his counsel attend the defense-arranged compulsory medical examination ("CME"); (2) videotape and audiotape the CME; (3) determine in advance which questions the defense-retained physician could not ask; and (4) have his attorney be permitted to instruct him which questions he should not answer at the CME. The Order did, however, permit Frasca to audiotape the oral medical history portion of the CME (assuming that an oral history is even taken and, if so, requiring the timely production of a copy to NCL).

In its reconsideration motion, NCL makes two arguments. First, NCL contends that Frasca secretly obtained his own physical examination in Miami from a doctor selected by his counsel. NCL argues that this development requires the Court to "even the playing field" and prohibit Frasca from audiotaping the oral medical history portion of NCL's CME because it is now too late to permit NCL to similarly audiotape the oral medical history portion of Frasca's examination, which has already occurred.

NCL's second argument is based on general principles of fairness. NCL suggests that a prior CME and mediation which were scheduled in Miami were cancelled because of Frasca's argument, at the time, that it would be inequitable and "patently unfair" for him to travel twice to Miami. Because the Court previously continued the earlier CME and mediation based on Frasca's preference to not travel to Miami twice and because Frasca later traveled to Miami to see a consulting physician, NCL suggests that either it or the Court or both were somehow misled into providing Frasca

scheduling relief. Therefore, NCL argues that fundamental fairness dictates that Frasca not be allowed to audiotape the oral medical history portion of the CME.

The Court **denies** NCL's reconsideration motion.

First, as Frasca's counsel explained at the hearing, he did not know that his client decided to travel to Miami for his own examination by a consulting, non-treating doctor until *after* NCL's CME and the parties' mediation had been cancelled. Therefore, his counsel explained, he was not, and could not have been, misleading NCL or the Court. Second, even if NCL's theory was correct, it might warrant a separate motion for different relief but it would not cause the Court to change the substantive ruling. Third, the reasoning underlying the Court's earlier Order is still viable and NCL has not provided any new grounds to address the ruling on the merits.

Finally, for the reasons set out at the hearing, the Court also **denies** Frasca's *ore tenus* motion for reconsideration of the Order.

## II.    NCL-Bahamas' Motion to Compel Executed Interrogatories

NCL-Bahamas' motion to compel executed interrogatories is **denied** as moot, as Frasca produced the sworn, signed answers before the hearing. [ECF No. 87].

## III.    NCL-Bahamas' Motion to Compel Medical Record Release Authorizations

NCL-Bahamas' motion to compel medical record release authorizations (after first serving subpoenas which were not complied with because the recipients demanded Frasca's signed medical release authorization) is **granted**. As Frasca is

seeking damages for lost wages and future lost wages, NCL-Bahamas' is entitled to Frasca's relevant medical and wage-related records, and Frasca cannot deprive NCL-Bahamas of its ability to adequately investigate the facts of the case by refusing to sign an authorization. *See, e.g., Lischka v. Tidewater Servs., Inc.,* No. 96-296, 1997 WL 27066 (E.D. La. Jan. 22, 1997). *See also E.E.O.C. v. Thorman & Wright Corp.,* 243 F.R.D. 426, 429 (D. Kan. 2007) (explaining that the proper procedure is for a party to first serve a third-party subpoena under Fed. R. Civ. P. 45 and then file a motion to "compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own orders.").

Counsel shall work together to draft acceptable language governing the subject matter scope of the authorizations concerning records held by the Social Security Administration and the United States Department of Health and Human Services. The authorizations shall be specific to each subpoena and shall relate only to those records requested in the subpoena **and** which are relevant and discoverable. Frasca need not sign a general, blanket release authorizing the disclosure of all records in the custody of government agencies. *P.S. ex rel. Nelson v. The Farm, Inc.,* No. 07-2210-JWL-DJW, 2008 WL 185801 (D. Kan. Jan. 18, 2008) (noting difference between a Rule 34 request for production and a Rule 45 subpoena on a third-party, finding that Rule 45 applied because defendant tried to obtain the documents by subpoena and requiring the guardians to sign specific authorizations). If the parties are unable to agree upon the

language, then NCL-Bahamas will be able to schedule a hearing on short notice and the Court will determine the language.

## IV.    NCL-Bahamas' Motion for Sanctions

NCL-Bahamas' motion to compel also includes a request for sanctions, which the Court denies because NCL-Bahamas did not adequately confer with Frasca's counsel before filing the motion, a requirement of both Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(a)(3). In addition, this Court's Scheduling Order [ECF No. 36] specifically reminds counsel of their obligation to actually "confer (in person or via telephone) and engage in reasonable compromise in a genuine effort to resolve their discovery disputes **before** filing discovery motions. In other words, there must be **an actual conversation** before a discovery motion is filed." (emphasis in original).

Moreover, the Court's Scheduling Order also notes the type of effort to confer which will typically be **un**acceptable: "Sending an email or telefax to opposing counsel with a demand that a discovery response or position be provided on the same day will rarely, if ever, be deemed a good faith effort to confer before filing a discovery motion."

In the instant case, NCL-Bahamas' counsel sent an email to Frasca's counsel at 11:34 a.m. on June 6, 2013 concerning Frasca's February 22, 2013 supplemental interrogatory answers. These answers were unsigned and unverified. In more than three months since they were served, NCL-Bahamas' counsel had not previously raised the issue of the answers being unverified. The June 6, 2013 email did not mention the

5

delay of more than three months, did not take the position that verified answers needed to be provided by a date certain, and did not raise any concern that a response needed to be provided immediately. To the contrary, the email was casual and, quite frankly, friendly. Here is the email in its entirety: "Hello, Mike. I need these executed. Thanks."

Slightly more than five hours later, without having an actual conversation with Frasca's counsel, NCL-Bahamas filed its motion to compel. In addition to seeking an order compelling production of a verified version of the answers (and medical authorizations), NCL-Bahamas demanded sanctions against Frasca for "failing to comply with a court order."

The very next day, Frasca filed [ECF No. 87] his notice of serving executed interrogatory answers. Although Frasca's response was surely a diligent and timely response -- the very next day after receiving what seemed like a standard email about an ordinary, garden-variety discovery issue -- it was too late to avoid a motion to compel, complete with a sanctions demand, which had been filed the afternoon before.

If NCL-Bahamas had followed the Court's Scheduling Order and had an actual conversation with Frasca's counsel, then it likely would have learned that the verified answers to the supplemental interrogatories could have been served within a short time. Likewise, had NCL-Bahamas actually made a good faith effort to engage in a pre-filing conferral, then it would have learned the same thing. But NCL-Bahamas, after doing nothing about the unsigned and unverified answers for more than three months,

pulled the discovery motion trigger far too quickly (and in violation of the applicable rules and this Court's Scheduling Order).

Fed. R. Civ. P. 37 **requires** an award of fees and costs to the party prevailing on a discovery motion, absent certain limited exceptions inapplicable to the unsigned interrogatory answers component of the motion. Therefore, NCL-Bahamas' counsel shall pay to Frasca $175 in fees and costs. If either party (or counsel) believes that the amount of the award is unreasonable, then that party may file a motion and the Court will schedule an evidentiary hearing in which counsel shall produce their respective time records. NCL-Bahamas' counsel shall pay the $175 by June 21, 2013 and shall submit an affidavit of compliance to the Court's efile inbox (which is not a public record available through CM/ECF). NCL-Bahamas' counsel shall pay the award personally and shall not, either directly or indirectly, pass on the cost to his client or to his law firm.[2]

Although NCL-Bahamas was successful on part of its motion (concerning a medical records release authorization), Rule 37 does not justify an award of fees or costs in NCL-Bahamas' favor for two reasons. First, NCL-Bahamas did not properly engage in a pre-filing inquiry. Second, the law on the issue of medical records authorizations is far from clear. The Eleventh Circuit Court of Appeals has not issued any published

---

[2]        This $175 award is not a sanction. Instead, it is a mandatory fee-shifting mechanism required by Fed. R. Civ. P. 37. Therefore, this Order would not require NCL-Bahamas' counsel to answer "yes" if ever asked (e.g., by an insurance carrier, by a judicial nominating commission, by a prospective employer) if a court had ever imposed sanctions against him.

opinions on point, as best as the Court can tell,[3] and the district courts have taken inconsistent positions.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.      The Court denies NCL's reconsideration motion and Frasca's *ore tenus* reconsideration motion.

2.      Frasca shall sign the required medical release authorizations. However, with regards to the authorizations for the release of records from the Social Security Administration, the United States Department of Health and Human Services, or any other government agency, Frasca shall sign agency-specific, subpoena-specific authorizations. If the parties are unable to agree on upon the language of the authorizations, then they shall contact the Court in order to schedule a hearing for the Court to determine the language.

3.      NCL-Bahamas' counsel shall pay $175 to Frasca.

**DONE AND ORDERED** in Chambers, Miami, Florida, June 12, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

---

[3]      At the hearing, NCL-Bahamas' counsel advised that the Eleventh Circuit has not decided this specific issue, and the Court has been unable to locate any authority either.

8