UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-20662-CIV-GOODMAN

[CONSENT CASE]

THOMAS FRASCA,

    Plaintiff,

v.

NCL (BAHAMAS) LTD., et al.,

    Defendants.

_____/

**ORDER ON LAST-MINUTE DISCOVERY MOTIONS**

Iconic musician Carole King explained a simple and straightforward sentiment in her hit song, "It's Too Late": "And it's too late, baby, now it's too late/ Though we really did try to make it."[1] Otis Redding expressed a similar view in his "It's Too Late" song: "But it's too late/ It seems like it's too late."[2] Eighteen years later, British hard rock band Def Leppard sang a similar refrain in "Too Late for Love": "Is it all too late?/ Much too late/ Can't you see it's all too late."[3]

Framed by these lyrics warning of untimely action, the Court is confronted with two motions arising from the parties' failure to timely address discovery disputes and

---

[1] *It's Too Late, on* TAPESTRY (A & M Records 1971).

[2] *It's Too Late, on* THE GREAT OTIS REDDING SINGS SOUL BALLADS (Volt/Atco 1971).

[3] *Too Late for Love, on* PYROMANIA (Mercury 1983).

their last-minute motions to obtain relief which could have (and should have) been sought far earlier. In particular, Defendant Norwegian Cruise Lines ("NCL") filed a motion for leave to submit a supplemental liability expert report and Plaintiff Thomas Frasca ("Frasca") filed a motion to compel. [ECF Nos. 145; 146].

In its near-the-buzzer motion, NCL wants permission for its retained expert to supplement his expert report so that he can amend his opinion to include the new conclusion that (1) the tread pattern on the shoes worn by Frasca when he fell "exhibited significant wear that included areas devoid of tread pattern or reduced tread depth[,]" and (2) the wear on Frasca's shoes -- closed-heel, canvas-top "Crocs" -- "was a key contributing factor in the subject incident." [ECF No. 145-1].

Frasca's eleventh-hour motion seeks several types of relief. First, Frasca wants NCL to produce information about prior slip and falls on all NCL vessels having the same or similar deck surfaces for the five years before his fall. Second, Frasca wants to delay his response to NCL's summary judgment motion until the information is provided. Finally, as an alternative type of relief, Frasca asks the Court to find that NCL's security officer's deposition testimony about prior slip and falls is sufficient to establish notice.

But both motions were filed too late, and the Court therefore **denies** them both.

## I. GENERAL BACKGROUND

Frasca claims he was injured in a slip and fall accident on NCL's vessel *Pride of America*. According to Frasca, the fall caused a complete severing of his hamstring, requiring surgery and the reattachment of the hamstring with surgical screws.

Frasca filed his lawsuit in February 2012. Since then, counsel have traveled to Hawaii twice for depositions and have had numerous discovery disputes, triggering several discovery motions and hearings. In other words, they have not been shy about seeking judicial intervention in the discovery process.

On January 31, 2014, the parties filed cross summary judgment motions. [ECF Nos. 137; 138; 144]. About a week later, the parties filed the instant cross-discovery motions. [ECF Nos. 145; 146].

## II. DISCUSSION

### A. Background of the Two Motions

1. *NCL's Motion -- Shoe Business*

NCL seeks permission for its expert witness to provide another opinion concerning Frasca's shoes. [ECF No. 145]. NCL says its liability expert could not address any issues concerning Frasca's shoes because Frasca failed to make both shoes available for inspection in Miami, "despite repeated requests" dating back to May 2013. [ECF No. 145-2, p. 4]. According to NCL, Frasca's counsel advised in August 2013 that the shoes would be available for inspection only at the Spokane, Washington offices of Frasca's

expert witness. [*Id.*]. NCL did not take up that offer but did not file a motion to compel the production of the shoes in Miami. Instead, it asked Frasca's counsel to bring the shoes to Frasca's deposition. [ECF No. 145-3, p. 1]. On November 15, 2013, Frasca's counsel advised that the left shoe was in his Miami office and could be inspected there but that the right shoe still had to be inspected in Spokane. [ECF No. 145-4].

Again, NCL did not file a motion to compel the production of both shoes in Miami. Rather, approximately two months later, on January 14, 2014, NCL's counsel renewed his request that both shoes be produced so that NCL's expert could examine them. [ECF No. 145-5]. Frasca's counsel would not budge, advising that the left shoe could be inspected in Florida but that the right shoe must be inspected in Washington.

Yet again, NCL did not file a motion about the shoes. Rather, it arranged for its counsel to inspect the left shoe at Frasca's counsel's office in Miami on January 18, 2014. For reasons left unclear in its motion, NCL's counsel was able to inspect the right shoe in Hawaii on January 21, 2014.

On February 7, 2014, NCL's expert prepared a supplemental report based on his review of three digital photographs of Frasca's right shoe. NCL's expert had already reviewed 16 digital photographs of Frasca's left shoe, and this was mentioned in the initial January 20, 2014 report. [ECF No. 150]. The initial report did not contain any opinions about the wear of the tread on Frasca's left shoe or if the wear was a contributing factor in the slip and fall. The expert's supplemental report, however,

4

expanded the opinions to include a conclusion that "the wear of the tread on the soles of Mr. Frasca's shoes was a key contributing factor in the subject incident." [ECF No. 145-1].

Frasca's response in opposition to the motion raises several points. The most salient objection is that NCL inspected Frasca's shoes on the day he fell and also took at least one photograph of Frasca's shoes **on March 19, 2011**. [ECF No. 150, p. 11]. According to Frasca, NCL's expert had the March 19, 2011 photograph, a later photograph of the left shoe taken by defense counsel, and Frasca's expert's report when he issued his initial expert report. [ECF No. 150, p. 2]. But significantly, Frasca says, NCL's expert is silent on the shoes in his first report and does not offer or reserve an opinion on whether the wear of the shoes contributed to the fall. Thus, Frasca argues that NCL's motion is too late because it has known about Frasca's shoes for over two and a half years. Alternatively, Frasca urges the Court to reopen discovery if it were to grant NCL's motion.

  2. *Frasca's Motion*

Frasca asks for an order compelling NCL to provide information about prior slip and falls on all NCL vessels with "Bolidt" decks for five years before Frasca's fall. In the

alternative, Frasca asks the Court to find that the deposition testimony of a fact witness (i.e., a security officer) about prior slip and falls is "sufficient to establish notice."[4]

According to Frasca, NCL should have to produce this information because it was included as an area of inquiry (number 18) in his December 12, 2012 Rule 30(b)(6) deposition notice and NCL did not timely object. [ECF No. 146, p. 13]. In particular, Frasca argues that the date for the 30(b)(6) deposition was rescheduled numerous times between January 2013 and January 2014 and was finally taken on January 29, 2014. But it was not until January 16, 2014 that NCL served five pages of objections. In its objections, NCL objected to providing information about earlier slip and falls other than those occurring within a three-year period aboard the *Pride of America*.

Frasca never flagged the issue during the year gap between the first 30(b)(6) notice (for a January 2013 deposition) and the final one (for a January 2014 deposition) and he did not move to compel. Although Frasca filed other discovery motions [ECF Nos. 122, 124] after NCL served its objections to the 30(b)(6) issues, they did not address any of NCL's 30(b)(6) objections. Instead, Frasca took the 30(b)(6) deposition and then filed a post-deposition motion to compel.

Frasca notes that he took the security officer's deposition in March 2013, when the officer testified that there had been other slip and falls on decks with the same material and on wet decks.

---

[4]   Frasca's request for more time to respond to NCL's summary judgment motion is moot as Frasca has already filed his response. [ECF No. 156].

NCL raises several arguments in its opposition, the most relevant of which are as follows. [ECF No. 152].[5] First, NCL contends that Frasca's instant motion is an improper attempt to circumvent a prior order denying Frasca's motion to compel interrogatory answers on the same issue. Second, NCL points out that its 30(b)(6) witness **was in fact asked questions about prior slip and falls and answered those questions**. Third, NCL contends that Frasca failed to follow up with questions regarding prior slip and falls when he took the security officer's deposition. Finally, NCL argues that a fleet-wide search going back for five years is overbroad and unduly burdensome.

## B. Applicable Legal Principles to Both Motions

Local Rule 26.1(h)(1) requires that all motions to compel discovery be filed within 30 days "of the occurrence of the grounds for the motion." Local Rule 26.1(h) "reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve amongst themselves." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10-24310-CIV, 2011 WL 6190160, at *2 (S.D. Fla. Dec. 2, 2011). Local Rule 26.1(h), however, "is permissive and affords the Court discretion in whether to consider a late-filed motion." *Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010).

---

[5]  The Court notes that NCL's response violates the Court's Scheduling Order, which requires *all* filings to be double-spaced. [ECF No. 36, p. 10]. For the sake of efficiency, the Court will not strike NCL's response. However, the parties are advised that the Court *will* strike any future filings that are not double-spaced.

7

The Court's Trial Scheduling Order's expert report requirements mirror the obligations imposed by Federal Rule of Civil Procedure 26(a)(2)(B). [ECF No. 36]. Rule 26 requires, unless otherwise stipulated or ordered by the court, a witness disclosure for an expert witness retained or specially employed to provide expert testimony in the case to be "accompanied by a written report," which must be prepared and signed by the witness and contain the following: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them"; and "(ii) the facts or data considered by the witness in forming them."

An expert report must be complete to the point where "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Dyett v. N. Broward Hosp. Dist.*, No. 03-60804, 2004 WL 5320630, at *1 (S.D. Fla. Jan. 21, 2004) (granting motion to strike expert witness because, among other reasons, counsel's summary was an inadequate substitute for the required report) (internal citations and quotations omitted). In *Dyett*, the court stated that "expert reports must not be sketchy, vague or preliminary in nature" and found the summary provided by counsel as "fail[ing] miserably to satisfy the requirements" of the Local Rule and Rule 26. *Id.; see also Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998); *Fisher v. Carnival Corp.*, No. 11-22316-CIV, 2013

WL 2157164 (S.D. Fla. May 17, 2013) (granting, in part, defendant's motion in limine to exclude expert opinion testimony).

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or the witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "'[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Dyett*, 2004 WL 5320630, at *2 (quoting *Salgado,* 105 F.3d at 742).

Given these rules, courts do not hesitate to strike experts when adequate reports have not been timely provided, and appellate courts regularly affirm orders excluding experts under these scenarios. *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (affirming district court's exclusion of an expert's affidavit and explaining that compliance with Rule 26's expert witness disclosure rule "is not merely aspirational"); *see also Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724 (S.D. Fla. May 3, 2010) (granting defendant's motion to strike expert witnesses and precluding them from testifying).

"Generally, when assessing whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless courts consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for

9

its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Warner v. Ventures Health Care of Gainesville, Inc.*, No. 5:00-CV-308-OC-10-GRJ, 2001 WL 36098008, at *1 (M.D. Fla. Aug. 1, 2001) (internal citations omitted).

### C. Analysis

The Court does not accept as logical or persuasive NCL's argument that its expert needs to provide another opinion and to supplement his report because he did not earlier have the opportunity to inspect both shoes. NCL requested the shoes a long time ago and never until very recently bothered to follow up and finalize the necessary arrangements to have its expert inspect them or seek judicial intervention. Moreover, it had a digital photograph in its possession since March 2011 but failed to arrange for its expert to provide an opinion about the shoes' tread from the photograph.

Filing a motion to amend an expert's report to provide a supplemental opinion after the expert deadline expired under the procedural history here is an illustration of the too little/too late doctrine. *Vazquez v. 4011 Prof'l Ctr. Condo, Inc.*, No. 07-21276, 2008 WL 2625526, at *1 (S.D. Fla. Mar. 7, 2008). NCL could have raised the issue at any time after May 2013 but it waited until the rebuttal expert deadline expired before seeking another opinion. The Court purposefully scheduled the expert disclosure deadline before the dispositive motion deadline -- so that the parties could, if they wished, have generated a summary judgment motion (or other motion) on the basis of expert

disclosures. [ECF No. 36]; *see also Ruhland v. Walter Kidde Portable Equip., Inc.,* 179 F.R.D. 246, 250 (W.D. Wis. 1998) (the deadlines in a pretrial order "are not selected arbitrarily by the court"). Moreover, the Court is unconvinced that NCL's expert could not have offered an opinion on the wear based on the photograph NCL's security officer took shortly after the fall. And, if the expert needed to actually examine both shoes, then NCL has not explained why it never pursued the issue with the Court.

Permitting NCL to rely on a new expert witness opinion at this stage would further delay the case. Frasca would surely want to take the expert's deposition again, in order to question him about the new opinion concerning the wear on the shoes -- and Frasca's expert then might want to amend his opinion to reach conclusions about the new opinion offered by NCL's expert.

By the same token, Frasca's motion is also untimely and is his proverbial third bite at the apple to obtain this information.

As the Court recently explained:

> In February **2013**, Frasca and NCL filed cross-motions to compel discovery before an upcoming discovery-related trip to Hawaii. [ECF Nos. 37; 39]. The Court held a hearing on these motions on February 19, 2013, and entered an Order on February 21, 2013 resolving some, but not all, of the parties' discovery disputes. [ECF Nos. 48; 52]. The reason for the partial ruling was because the parties agreed at the hearing to only raise "the discovery issues they deemed important for their Hawaii trip and for the Court to hold a second hearing on the remaining discovery issues, if necessary." [ECF No. 52, p. 2]. For almost a year, neither party moved or contacted the Court to resolve the remaining discovery issues.

[ECF No. 127, p. 2 (emphasis in original)].

11

On January 16, 2014, Frasca filed a renewed discovery motion to have the Court rule on the outstanding February 2013 discovery issues. [*Id.*; ECF No. 124]. One of those February 2013 discovery issues was to compel NCL to produce information regarding prior slip and falls for the five year period before Frasca's accident. [ECF No. 124, p. 2]. The Court denied Frasca's renewed discovery motion because it was untimely. [ECF No. 127].

Frasca is now for the *third time* seeking to compel NCL to produce the same information he sought to compel in February 2013. He did not seek reconsideration of the Court's recent order denying his motion as untimely [ECF No. 127], nor has he explained why it took him almost a year to bring up this issue before the Court. Accordingly, the Court yet again denies Frasca's request for this information.

The Court similarly finds that Frasca could have (and should have) focused on NCL's year-long failure to interpose objections to the list of topics to be covered by the 30(b)(6) deposition and demanded a response -- so that any objections could be timely ruled upon before the deposition. Frasca listed 36 separate topics in the 30(b)(6) notice he issued in December 2012. It is risky and likely illogical to assume that NCL was not going to object to at least *some* of those topics. Although the deposition was rescheduled numerous times, Frasca never required NCL to state its position on the 36 topics before the actual deposition in January 2014. Likewise, he never sought an order compelling a specific, category-by-category response. Instead, Frasca did not confront the issue until

the written objections were received in January 2014. Even then, Frasca did not move to compel or schedule a hearing on the objections before taking the deposition.[6]

From a pragmatic perspective, the Court notes that NCL's 30(b)(6) representative **did** answer questions regarding prior slip and falls. [ECF Nos. 146, pp. 29-30; 152-4]. In addition, if the Court were to permit Frasca to take another 30(b)(6) deposition on questions relating to topic 18 or enter the requested order compelling NCL to provide "information" concerning prior slip and falls, then the already-continued deadlines would be at risk and the trial would likely need to be continued yet again.

As noted earlier, Frasca seeks alternative relief: an order finding that the deposition testimony of an NCL security officer and answers to requests for admission "establish notice and knowledge of the dangerous condition created by the wet Bolidt deck." Frasca did not specify *which* request for admission he thinks is supportive of his request, however.

Nevertheless, notwithstanding the vague ground for the requested "finding," the Court is not prepared to make such a finding. In effect, Frasca is asking the Court to enter a partial summary judgment relating to liability -- i.e., that NCL had sufficient notice of a dangerous condition. If Frasca wanted to obtain a summary judgment ruling

---

[6] Frasca had time to seek a ruling between January 16, 2014 (when NCL served its objections) and January 29, 2014, when he took the 30(b)(6) deposition. Alternatively, Frasca could have rescheduled the 30(b)(6) deposition for a later date up to the February 11, 2014 discovery cutoff deadline.

in *his* favor on this issue, then he should have filed an appropriate motion.[7] Given that the summary judgment deadline has expired, Frasca cannot obtain summary judgment relief now by filing a post-deadline motion for a "finding." *See, e.g., McClaney v. Macon Cnty. Bd. of Educ.*, No. 3:10CV219-MHT, 2011 WL 9015 (M.D. Ala. Jan. 3, 2011) (declining to consider dispositive motions filed after dispositive motions deadline). Thus, the Court denies Frasca's motion for alternative relief concerning a finding on notice.

### III. CONCLUSION

For the reasons stated above, the Court denies NCL's motion and Frasca's motion.

**DONE AND ORDERED** in Chambers, in Miami, Florida, February 24, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[7] NCL filed a summary judgment motion based, in part, on its contention that **it** had no notice that the starboard deck is an unreasonably slippery location for passengers to be walking on. Frasca opposes that summary judgment motion, but *defending* a summary judgment motion is not the same as affirmatively seeking summary judgment on the same factual issue. *See, e.g., Delvecchio v. I.R.S.*, Nos. 07-14247-CIV & 07-14249-CIV, 2008 WL 2883929, at *2 (S.D. Fla. July 5, 2008) (requiring non-movant to file a response **and** file its own motion for summary judgment on the same issue); 10A Wright & Miller et al., *Federal Practice and Procedure* § 2720 (3d ed. 2013) (explaining court's options when party does not move for summary judgment).