**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-20662-CIV-GOODMAN**

**[CONSENT CASE]**

THOMAS FRASCA,

      Plaintiff,

v.

NCL (BAHAMAS) LTD., et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION

On March 19, 2011, plaintiff Thomas Frasca ("Frasca") slipped and fell while walking on the deck of defendants NCL (Bahamas) Ltd., Norwegian Cruise Lines, and NCL America's (collectively, "NCL") cruise ship the *Pride of America*. A fare-paying passenger on the ship, Frasca filed this personal injury lawsuit against NCL. NCL has now moved for summary judgment. The Court grants the motion on three independent bases, each one of which is sufficient to justify summary judgment in NCL's favor.

First, Frasca alleges in his complaint that he slipped "in an accumulation of liquid on the deck" which had "leaked from the ceiling." He alleged no other facts or theories in the complaint. There is, however, absolutely no evidence that the liquid Frasca slipped on had leaked from a ceiling. Rather, as Frasca now concedes, he slipped and fell on water that had accumulated on the deck from rain or mist. The law is clear that Frasca may not amend his complaint through summary judgment briefing.

Second, while he never amended his complaint alleging only a leak-from-the-ceiling claim, Frasca testified that he slipped on the deck which was wet from rainwater or mist. Frasca, however, saw that the deck was wet before he slipped, and NCL is under no duty to warn him of such an open and obvious condition.

Third, there is insufficient evidence that NCL had notice of prior similar accidents or that the deck was unreasonably slippery due to NCL's negligence in designing, installing, constructing, or selecting the deck material.

## I.   BACKGROUND

### A. Factual Background

Frasca and his wife, Barbara, flew to Honolulu, Hawaii to meet long-time friends, Steve and Tish Stanner, to celebrate the Stanners' 25th wedding anniversary aboard NCL's *Pride of America*. [ECF Nos. 137-1, pp. 2, 7, 8;[1] 137-3, pp. 20-22]. On March 19, 2011, the Frascas and Stanners arrived at the ship but there was a delay in boarding because NCL was still cleaning and sterilizing the ship after a virus outbreak. [ECF Nos. 137-1, p. 8; 137-3, p. 23; 137-6, pp. 10-11]. After they boarded the ship, the cabins were not ready and the Frascas and Stanners went to the pool to have some food and wait. [ECF Nos. 137-1, p. 9; 137-2, pp. 9-10]. When their cabins were ready, they left the pool and headed to their rooms. [ECF Nos. 137-1, p. 9; 137-2, p. 11].

---

[1]      All references to docket entry page numbers refer to the numbers added by the CM/ECF system – not the original pagination.

After spending the afternoon resting, the Frascas and Stanners went to have dinner. [ECF No. 137-1, pp. 9-10]. When they finished dinner they left through the restaurant's wine bar to explore the rest of the ship. [ECF Nos. 137-1, p. 11; 137-2, p. 12; 137-3, pp. 24-25]. To get to the deck, they exited one-by-one through a set of sliding glass doors. [ECF Nos. 137-1, pp. 11-12; 137-2, pp. 12-13; 137-3, p. 25; 137-6, p. 13]. Frasca was the last to exit. [ECF Nos. 137-1, p. 12; 137-3, pp. 25-26; 137-6, p. 13]. He walked about four to six feet away from the doors and slipped and fell. [ECF Nos. 1; 137-1, pp. 12-14; 137-3, pp. 26, 28-29; 137-6, pp. 14-16].

Frasca received medical treatment on the ship and later at Maui Medical Center. [ECF No. 137-1, pp. 19-20]. He was, however, not diagnosed with a torn hamstring until he returned home. [*Id.* at pp. 22, 29-30]. Frasca had surgery to repair the tear and followed up with physical therapy. [*Id.* at p. 30]. Even after treatment, Frasca says he is rarely pain-free. [*Id*. at pp. 31-33].

Frasca filed this action against NCL in February 2012. [ECF No. 1]. In his complaint, Frasca alleged the following: "MR. FRASCA slipped and fell in an accumulation of liquid on the deck. **Liquid had leaked from the ceiling and puddled on the plastic**. . . ." [*Id*. at ¶ 5 (emphasis added)]. Frasca's interrogatory answer, however, painted a much different picture as to why he fell:

> The boat was still being cleaned due to the stomach virus outbreak. They were **cleaning** the outside areas of the boat and I believe that **resulted** in the water pooling in an unevenly laid area of the deck covering. **I do not believe the water could have come from anywhere else**.

3

[ECF No. 137-7, p. 4, ¶ 9 (emphasis added)].

During his deposition, he abandoned these two alleged factual theories and changed the nature of his claim concerning the slip and fall for the third (and final) time. Frasca testified that it was "misting" and that he fell because of rainwater or water from the misting on the deck. [ECF No. 137-1, pp. 12-13, 17]. NCL's attorney then asked Frasca about the liquid leaking from the ceiling allegation and Frasca's *attorney* interjected with the following:

> As I said before we went on the record, that he has not seen it and **that's actually a mistake from a cut and paste from a prior NCL claim** where a woman slipped and fell on an interior hallway with plastic that had been strung across from work that was being done in the ceiling and pipes were leaking on the plastic.

[ECF No. 137-1, p. 23 (emphasis added)].[2]

Testimony from Frasca's wife and the Stanners corroborates Frasca's deposition testimony that Frasca slipped and fell because of rainwater or water from the misting

---

[2]      During Frasca's expert's deposition, Dr. Richard Gill, NCL's attorney again brought up this allegation, and again Frasca's attorney interjected:

> I don't know why it keeps reoccurring, but upon return to Miami **we'll file a motion to amend the complaint** to alleviate and remove this typographical error, cut-and-paste issue from a prior complaint. And you've taken all the depositions and nobody has said that anything was leaking or that there was any plastic on the deck and there's no evidence to reflect that.

[ECF No. 137-9, p. 32 (emphasis added)]. Frasca's attorney, however, never moved to amend the complaint.

that was on the deck. [ECF Nos. 137-2, pp. 13-15; 137-3, pp. 27-28, 35-37; 137-6, pp. 13-15, 17-18]. In fact, upon exiting onto the deck, Steve Stanner noted out loud that the deck was wet and slick. [ECF No. 137-2, p. 14]. Mrs. Frasca and Mrs. Stanner testified that they heard a wet-and-slick-deck comment. [ECF Nos. 137-3, p. 27; 137-6, pp. 14-15].

In sum, there is no evidence that Frasca slipped and fell because of liquid that had leaked onto the deck from the ceiling, as alleged in his complaint. Similarly, there is no evidence that Frasca slipped and fell because of pooling water resulting from NCL's cleaning of the deck, as he stated in his interrogatory answer. Rather, as Frasca now concedes, he slipped and fell on a wet deck caused by rainwater or water from misting.

**B.  NCL's Summary Judgment Motion**

NCL moved for summary judgment on the following grounds: (1) there is no evidence to support the only claim Frasca alleged in his complaint -- that he slipped and fell on liquid which had accumulated on the deck from a leak in the ceiling; (2) there is no evidence to support his claim in his interrogatory answer -- that a cleanup operation caused liquid to accumulate; (3) notwithstanding that Frasca's complaint does not allege he slipped and fell on rainwater, NCL is not liable because it was not on notice and, even if it was, a wet deck from rain or mist is an open and obvious condition for which NCL has no duty to warn; and (4) Frasca's expert did not test the area where Frasca slipped, which means that his opinion is insufficient to preclude summary judgment. [*See* ECF No. 137].

In response, Frasca says the allegation in the complaint about water leaking from the ceiling has been abandoned because it was in fact an "errant," mistaken claim caused by a defective "cut and paste" from another complaint. He argues that NCL's argument is "frivolous" because it has known about his theory of the case for some time. [ECF No. 156, p. 11]. Regardless of where the water actually came from, Frasca argues that: (1) his actual theory of liability is that the deck becomes unreasonably slippery when wet; (2) this theory does not relate to an open and obvious condition; (3) NCL was on notice of this so-called dangerous condition; and (4) NCL had a duty to warn. [*Id.* at pp. 11-12]. Finally, Frasca argues that there is evidence establishing the existence of prior slip and falls, but NCL is refusing to provide it, which makes summary judgment improper. [*Id.* at pp. 13-14].

In its reply, NCL reiterates the argument that Frasca has asserted two new and different theories not actually pled and that it should not be forced to defend against them. [ECF No. 169]. Additionally, NCL argues that although it did not have a duty to warn because the fact that rain may render a surface slippery is an open and obvious condition, it did in fact warn passengers about using care on the decks during wet conditions. [*Id.* at pp. 4-6]. It also argues that Frasca has failed to demonstrate that there was even one substantially similar prior accident to put NCL on notice.

After NCL filed its summary judgment motion, Frasca asserted **another** new theory of liability. In the Joint Pretrial Stipulation, Frasca *now* claims that NCL "did not

take the appropriate action to **construct** and maintain the deck in reasonable non skid transition [sic] and/or warn of the dangerous condition of the deck when wet." [ECF No. 192, pp. 1-2 (emphasis added)]. In response, NCL filed a motion *in limine* to exclude all evidence or theories not in the complaint, including the new theory of negligent construction. [ECF No. 203].

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, affidavits, and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Tyson*, 121 F.3d at 646. When evaluating a summary judgment motion, a court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Tyson*, 121 F.3d at 646.

III.   **DISCUSSION**

As noted above, the Court is granting summary judgment to NCL on three independent grounds.

A.   <u>Frasca's Attempt to Add New Facts and Theories Not Alleged in His Complaint at The Summary Judgment Phase is Inappropriate</u>

1.   *Background*

The only factual basis for Frasca's claim is found in paragraph 5 of his complaint, where he alleges that he was walking and "slipped and fell in an accumulation of liquid on the deck" that "had leaked from the ceiling." Frasca re-alleged this factual allegation, along with the other preliminary factual allegations, in the first paragraph of the negligence count, count I. The other conclusory allegations in count I relate back to **that** condition, as it is the sole condition mentioned in the factual allegations.

For example, Frasca alleges that NCL: "negligently failed to warn Mr. Frasca about **the** slippery wet conditions on deck 5, which was known to and/or created by NCL;" "failed to have in place warning signs to alert Mr. Frasca to the dangers posed by **the** defective, dangerous condition;" and "negligently created **said above-described** dangerous and defective condition." [ECF No. 1, ¶ 12 (emphasis added)]. The only "condition" that these allegations can possibly refer to is the liquid from the ceiling leak which had pooled on the deck.

Likewise, paragraph 13 alleges that "***the* defective dangerous condition** was well known to NCL, its agents and/or employees, having been created by NCL." [*Id.* at ¶ 13

(emphasis added)]. In a similar vein, paragraph 14 discusses "the above described incident" and alleges that it caused Frasca to suffer severe and permanent injuries. [*Id.* at ¶ 14]. And paragraph 12(a) alleges that NCL breached its duty because it "negligently failed to maintain said vessel, and more particularly deck 5, in a reasonably safe condition." Similarly, paragraph 12(l) alleges that NCL "knew of the existence of **said** dangerous and defective condition or, in the exercise of reasonable care, should have known of the existence of said dangerous condition and failed to remedy **the** dangerous condition." But the only incident described in the complaint is the alleged leaky ceiling and the resultant liquid which pooled on the deck, and this is the only context in which the allegations can be evaluated.

2.  *Applicable Legal Standard*

To assert a new claim at the summary judgment stage, the proper procedure is to amend the complaint under Rule 15(a) -- not argue it in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004); *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). This rule not only applies to legal claims, but to "additional facts" as well. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n. 27 (11th Cir. 2010) (declining to consider additional facts first raised in summary judgment briefing); *see also Flintlock Const. Srvcs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013).

The dangers arising from disregarding a complaint's allegations and accepting *de facto* factual amendments at the summary judgment stage is that "the court may create the impression that it has become the plaintiff's advocate – or his worst enemy – depending on what the court does with the claim after amending it." *Miccosukee Tribe of Indians of Florida v. United States,* 716 F.3d 535, 559 (11th Cir. 2013). Another danger is that the defendant does not have the opportunity to assert applicable affirmative defenses or has to blindly raise affirmative defenses. *Menzie v. Ann Taylor Retail Inc.*, No. 13-11277, 2013 WL 6487349, at *4 n.10 (11th Cir. Dec. 11, 2013); *see also Ganstine v. Sec. Fla. Dep't of Corr.,* 502 F. App'x 905, 910-11 (11th Cir. 2012).

       3.  *Analysis*

Frasca concedes that there is no evidence that NCL negligently allowed water to **leak from the ceiling** and puddle onto the deck causing him to slip and fall. Frasca asks the Court to disregard this allegation because his counsel informally explained it away by saying it is a mistaken allegation caused by a deficient cut and paste from another complaint. Assuming that the critical paragraph was lifted from another, *unidentified* complaint, Frasca changed the paragraph to substitute his name for the plaintiff in the earlier complaint but, under his theory, did not also change the other critical factual allegations. There is, however, some evidence to support the cut and paste theory. The vessel at issue is *Pride of America*, but in his complaint he *also* mentions the vessel "*Pride*

*of Hawaii*." [ECF No. 1, ¶¶ 10-11 (emphasis added)]. So the Court will assume that this portion of the complaint was truly a "cut and paste" from another complaint.

Even giving Frasca this benefit of the doubt, Frasca has been on notice that his complaint alleged only one factual theory which he concedes is incorrect. He has also been on notice that NCL objected to allegations and claims not framed by the complaint. Even more, his counsel explicitly recognized the need to amend the complaint at Dr. Gill's deposition and represented on the record that he would move to amend. Yet, for whatever reason, Frasca has never moved to amend his complaint.

The Court cannot force Frasca to amend his complaint. He is the master of his claim. If Frasca failed to seek leave to amend after learning that the sole factual theory advanced in the complaint is incorrect because of an in artful "cut and paste" job, then it is not the Court's role to amend it for him. *See, e.g., Burger King Corp. v. Weaver,* 169 F.3d 1310, 1318 (11th Cir. 1999) (affirming dismissal without remand to amend when plaintiff failed to request leave to amend the complaint in district court).

This Court is bound by the pleadings before it. Arguments based on facts and theories not in the pleadings are not properly considered for summary judgment purposes. *See, e.g., Burgin v. Burlington Coat Factory,* No. 2:11-CV-753-JHH, 2013 WL 2444038, at *10-11 (N.D. Ala. June 4, 2013) (granting summary judgment for defendants in lawsuit alleging claims of race and age discrimination and retaliation and explaining that "the only claims before the court were the ones filed in her original complaint");

*accord Matthews v. City of Mobile*, No. 12-00353-KD-N, 2013 WL 5883833 (S.D. Ala. Oct. 31, 2013); *Joiner v. Mason*, No. 2:09-CV-243-TFM, 2011 WL 2142768, at *6, n.6 (M.D. Ala. May 23, 2011) (granting summary judgment to defendants in civil rights action and noting that new factual allegations and/or additional theories of liability not in the pleadings are not properly before the court); *see also Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993) (affirming trial court's ruling that testimony was properly excluded because the allegations were not asserted in the complaint).

Frasca's case is similar to *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604 (S.D. Fla. Oct. 22, 2012), In *Weiner*, a passenger slipped while walking on the deck near an on-board coffee shop. *Id.* at *1. The slip was allegedly caused by the presence of a "foreign substance" on the tile floor. *Id.* Weiner sought to hold Carnival liable on the theory that a foreign substance rendered the tile flooring unreasonably dangerous. In an effort to avoid summary judgment, Weiner relied on an expert witness, who testified that "the flooring material Carnival installed on the ship's deck was extremely slippery and dangerous when wet." *Id.* at *4.

District Judge Robert Scola was not persuaded by the expert's testimony -- which is similar to the opinions offered by Frasca's expert. In analyzing why summary judgment in Carnival's favor was appropriate even though the expert testified to several negligent construction and selection theories, Judge Scola noted that Weiner "never pled" them. *Id.* at *5. Judge Scola carefully dissected the allegations in the

complaint and concluded that they all related to the presence of a foreign substance (just like Frasca's allegations relate only to the pooled liquid from the leaky ceiling), not negligent construction and selection of the tile flooring. *Id*.

Like in *Weiner*, the only claim pled is the one alleging that Frasca slipped because a leak in the ceiling caused liquid to pool on the deck. As Frasca now admits, that claim has no factual support. As such, summary judgment for NCL is warranted.

**B.   NCL Had no Duty to Warn Frasca of an Open And Obvious Condition**

Even if Frasca slipped and fell because water from mist or rain made the deck slippery (a theory not advanced in the complaint), NCL is *still* entitled to summary judgment because a slick deck caused by water from rain or mist is an open and obvious condition.

1.   *Applicable Legal Standard*

General maritime law, as developed by federal courts, applies to an alleged tort committed aboard a ship. *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 1792628, at *2 (S.D. Fla. May 15, 2012) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989)). To prevail on his negligence claim, Frasca must show that: (1) NCL owed him a duty; (2) NCL breached that duty; (3) NCL's breach was the proximate cause of his injury; and (4) he suffered damages. *Carroll v. Carnival Corp.*, No. 11-23372-CIV, 2013 WL 1857115, at *2 (S.D. Fla. May 2, 2013).

The duty a ship owner owes to its passengers is "reasonable care under the circumstances of each case." *Cook*, 2012 WL 1792628, at *2 (internal quotations and citations omitted). A ship owner, however, is not an all-purpose insurer of a passenger's safety. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985). A carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013) (internal citations omitted). The duty to warn, however, does not extend to dangers that are open and obvious. *Magazine v. Royal Caribbean Cruises, Ltd.*, No. 12-23431-CIV, 2014 WL 1274130, at *4 (S.D. Fla. March 27, 2014); *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1, (S.D. Fla. 1986) (affirming dismissal of passenger's claim because the presence of a ledge behind a shower curtain was an open and obvious condition), *aff'd*, 808 F.2d 60 (11th Cir. 1986).

2. *Analysis*

In this case, the rainy/misty condition itself serves as an adequate warning that the deck would be wet and slick because it is obvious to a reasonable person. *Coto v. Hyannis Air Serv., Inc.*, No. CIV. 2005-191, 2008 WL 5632264, at *6 (D.V.I. Jan. 31, 2008). Indeed, federal courts routinely dismiss cases or grant summary judgment for defendants in similar cases involving accumulated rainwater which made a surface slippery. *See, e.g., Id.*; *Gunter v. United States*, 10 F. Supp. 2d 534 (M.D.N.C. 1998)

(granting summary judgment and holding that rainwater that accumulated on floor was open and obvious hazard); *Faircloth v. United States*, 837 F. Supp. 123 (E.D.N.C. 1993) ("Everybody knows that the hallways . . . during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be.").[3]

Frasca's reliance on two state court cases on this point is not persuasive. Unlike Frasca's slip and fall on an exterior deck covered with rainwater, the plaintiff in *Kloster Cruise Ltd. v. Grubbs*, 762 So. 2d 552 (Fla. 3d DCA 2000) was injured when she slipped and fell on an interior metal threshold in a doorway. *Id.* at 555-56. To be sure, in *Samuelov v. Carnival Cruise Lines, Inc.*, 870 So. 2d 853 (Fla. 3d DCA 2003) the plaintiff was injured while disembarking for an excursion when he slipped and fell on an upper deck because of the rain and wind. *Id.* at 854-55. However, the plaintiff there **had** to cross the wet exposed upper deck because there was no room for him in the lower deck, which was covered from the elements. *Id.* at 856. That is not the case here.

_____

[3]     *See also Wish v. MSC Crociere S.A.*, No. 07-60980-CIV, 2008 WL 5137149 (S.D. Fla. Nov. 24, 2008) (granting directed verdict in a slip and fall case where plaintiff was aware that rain could cause a pool deck to become wet and slippery); *Rodas v. Bi-Lo, Inc.*, No. 607CV029, 2008 WL 2415269 (S.D. Ga. May 21, 2008) (holding that rainwater tracked into a business is not an unreasonable condition, but an expected risk); *Hackworth v. United States*, 366 F. Supp. 2d 326, 331 (D.S.C. 2005) (granting summary judgment to defendant for slip and fall from rain in naval base store); *Holland v. United States*, 918 F. Supp. 87, 89 (S.D.N.Y. 1996); *Hess v. United States*, 666 F. Supp. 666 (D. Del. 1987) (dismissing plaintiff's claim for negligence after she slipped on a rainy day in the lobby of a post-office).

Moreover, Frasca and his companions knew that the deck was wet from rain or mist once they exited the sliding doors.[4] According to Mrs. Stanner, "[w]e noticed that it had rained or it was raining and that the flooring surface was wet," and "[t]he decking surface was wet and we looked and could tell it was misting." [ECF No. 137-6, pp. 13-14]. Mrs. Frasca testified that, "[w]e were all surprised that the deck was wet," "I remember Steve [Stanner] saying that to me that it was slick," and "[the deck] just was wet and shiny and there were some puddles of water." [ECF No. 137-3, pp. 25, 27-28]. Frasca, himself, also testified that "[i]t was misting," and "I saw, you know, what possibly could have been a wet deck, [sic] was a wet deck turned out to be." [ECF No. 137-1, pp. 12-14].

Frasca tries to avoid his deposition testimony by pointing to other deposition excerpts suggesting that he did not realize the deck was wet or that it was raining or misting. Those efforts, however, rely on tortured interpretations which do not generate a legitimate factual dispute and which cannot change the inescapable point that Frasca admitted to seeing a wet surface before he stepped out. The undisputed facts establish that Frasca was aware of an open and obvious danger, an outside deck which was wet from rain or mist and which therefore could be slippery. NCL had no duty to warn him of this. It is entitled to summary judgment.

---

[4]     For summary judgment purposes, the Court is not accepting NCL's position that it twice warned Frasca and his companions about the slippery-when-wet-conditions of the deck. [ECF No. 137-4, p. 14]. Frasca and his companions did not recall receiving any such warnings, written or spoken.

**C. There is Insufficient Evidence to Show That NCL had Notice of Prior Similar Accidents or that the Deck was Unreasonably Slippery**

One of Frasca's main arguments against summary judgment is that NCL was on notice of prior similar accidents or that NCL was on notice that the deck material it used on the ship was "unreasonably slippery" when wet. The problem with these arguments is two-fold. First, despite approximately two years of discovery, Frasca has provided insufficient evidence of prior *similar* accidents and provided no evidence regarding NCL's selection or construction of the deck material. Second, Frasca's contention that NCL knew the deck material it used was unreasonably slippery when wet goes to a negligent deck selection/construction theory of liability. That theory, however, was not alleged in his complaint.

1. _Applicable Legal Standard_

To impose liability on a carrier, the carrier must have had "actual or constructive notice of the risk-creating condition . . ." *Keefe*, 867 F.2d at 1322. However, where there is an allegation that the carrier **created** the unsafe or hazardous condition, a plaintiff does not need to prove notice. Instead, a plaintiff must show only that the carrier created the dangerous condition. *Long v. Celebrity Cruises, Inc.*, No. 12–22807–CV, 2013 WL 6043918, at *3-4 (S.D. Fla. Aug. 1, 2013).

17

2. _Analysis_

   a.  Insufficient Evidence of Prior Similar Accidents

In a strikingly similar case where a plaintiff fell on a wet deck aboard an NCL ship because of rainwater, another court in this district granted NCL summary judgment because the plaintiffs "produced no substantial evidence that [NCL] created a dangerous condition on its ship and thereby breached its duty of reasonable care." _Sorrels v. NCL (Bahamas) LTD._, No. 13-21413-CIV, 2013 WL 6271522, at *1, *10 (S.D. Fla. Dec. 4, 2013). The Court finds persuasive the rationale in _Sorrels_ on this particular point.

In granting summary judgment, the _Sorrels_ court noted that under the substantial similarity doctrine,[5] the plaintiffs failed to establish that conditions substantially similar to Sorrels' fall also caused the prior incidents. _Id._ at *8-10. In particular, the court noted the following: the incidents occurred at a variety of locations on the deck and none of them occurred where Sorrels fell; most of the prior incidents involved unknown wet substances; and many of the prior accidents did not involve rainwater. _Id._ at *9. The court reasoned that despite the claim of prior accidents aboard the ship, there was no evidence that a **similar** accident occurred where Sorrels fell. _Id._ Furthermore, these so-

---

[5]   The doctrine "requires that before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that conditions substantially similar to the occurrence caused the prior incidents." _Heath v. Suziki Motor Corp._, 126 F.3d 1391, 1396, n.12 (11th Cir. 1997). The doctrine, which applies when a party seeks to admit prior accidents or occurrences to show, for example, notice, is designed to "limit the substantial prejudice that might occur to a party should these past occurrences or accidents be admitted into evidence." _Tran v. Toyota Motor Corp._, 420 F.3d 1310, 1316 (11th Cir. 2005).

called similar accidents actually varied among the types of liquids or substances: unknown wet substances; water left over from cleaning; spilled ice cream, etc. *Id.*

Here, despite trying to show that similar accidents occurred on decks using the Bolidt decking, Frasca has been unable to show that another passenger slipped and fell where Frasca fell, **under similar conditions**. Frasca argues that the evidence of some prior falls establishes notice, but the mere fact that another passenger somehow slipped and fell on a deck somewhere aboard a cruise ship does not establish the requisite similarity. There are too many other unknown factors to conclude that the incidents are sufficiently similar. For instance, were the prior falls on a rain-soaked deck or was the deck wet or slippery because of another substance? What type of shoes, if any, was the passenger wearing? Was the passenger engaged in an activity other than walking, such as running or playing a game? Did the fall occur on the same deck surface? Frasca has provided no answers to these types of questions to assist the Court.

Frasca argues that he would have been able to produce this information had NCL not committed discovery violations and adequately responded to his discovery requests. Frasca's attempts to blame NCL are misguided. Frasca had approximately **two years** to obtain discovery. During that span, the Court held numerous discovery hearings to help the parties obtain the discovery they needed. Frasca, however, did not move to compel information regarding prior slip and falls until it was simply too late. And even then, he never provided the Court any reasonable explanation about why he

delayed seeking this discovery. As such, the Court denied his belated motions under Local Rule 26.1. [*See* ECF No. 183 (explaining history of Frasca's belated discovery motions)]. Nevertheless, Frasca was able to obtain deposition testimony from NCL's representatives about prior slip and falls. The deposition testimony, however, did not produce the answers Frasca was looking for. At bottom, there was no testimony about prior instances of substantially similar slip and falls and Frasca never followed up with additional deposition questions to determine if any prior slip and falls were substantially similar.

Consequently, Frasca has no one to blame but himself and he cannot defeat NCL's summary judgment motion because of his discovery procrastination. *See Jackson v. Hill,* 489 F. App'x 325 (11th Cir. 2012) (affirming summary judgment and rejecting plaintiff's argument that he was denied the opportunity for adequate discovery because magistrate judge and district judge denied his motion to compel as untimely); *accord Samadi v. Bank of America, N.A.* 476 F. App'x 819 (11th Cir. 2012); *see also Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1184 n. 35 (11th Cir. 2003) (affirming summary judgment and rejecting theory of inadequate discovery because plaintiff had approximately seven months to conduct discovery -- a period deemed "more than adequate").

To be sure, Frasca has obtained some evidence of prior falls aboard the ship. But he never established where, when, why, or how the falls occurred. Thus, there is no evidence of substantially similar slip and falls on the same deck near where Frasca fell.

In addition, NCL's corporate representative testified that there were no substantially similar incidents on the deck on the same side of the ship.

> b. There is no Allegation That NCL Negligently Designed or Selected the Deck Material And There is Insufficient Evidence on This Point

To be liable for negligent design or construction, a defendant must have played some role in the design or construction. *Rodgers v. Costa Crociere, S.P.A.,* 410 F. App'x 210, 212 (11th Cir. 2010) (affirming summary judgment in favor of cruise ship operator on negligent design theory in lawsuit filed by passenger who slipped and fell down a flight of stairs because there was no evidence that the cruise ship operator designed the stairs or the hand rails).

Ignoring the already-discussed point that Frasca's complaint does not allege a negligent design, maintenance, selection, or construction theory, the result here (i.e., summary judgment for NCL) would be the same even if an allegation had been made -- because Frasca has not offered any competent evidence to establish the allegation. *Magazine,* 2014 WL 1274130 (entering summary judgment for cruise ship on most counts raised by passenger who was injured on an on-board surfing simulator); *see also Weiner,* 2012 WL 5199604, at *4-5 (granting summary judgment to defendant cruise operator brought by passenger who slipped on a foreign substance and noting that plaintiffs presented no evidence that defendant had any say or participation in design decisions).

This lack of evidence (or allegation) on this point also completely negates Frasca's expert's testimony. Like in *Weiner,* the crux of his expert's testimony is that the

deck material itself is unreasonably slippery when wet. But, just like in *Weiner*, there is insufficient evidence in the record that NCL negligently selected, installed, constructed, or maintained the deck material. *Weiner*, 2012 WL 5199604, at *5. Moreover, Dr. Gill did not test the deck where Frasca fell. He tested six different locations on the ship, two of which admittedly were not where the accident occurred. [ECF No. 137-10, p. 3]. The other four locations tested were right outside of the wine bar, Dr. Gill, however, tested the area outside the *wrong* doorway. [*Id.* at pp. 5-6]. As such, the Court is not persuaded that Dr. Gill's testimony, without more, can defeat NCL's summary judgment motion. *See Weiner*, 2012 WL 5199604, at *5.

## IV.   CONCLUSION

Although Frasca's injuries "are surely unfortunate, liability cannot rest on sympathy alone." *Weiner*, 2012 WL 5199604, at *6. The Court grants summary judgment in NCL's favor, and all other pending motions are **denied as moot.**

**DONE AND ORDERED** in Chambers, Miami, Florida, April 9, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record