## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 12-20662-CIV-GOODMAN

### [CONSENT CASE]

THOMAS FRASCA,

      Plaintiff,

v.

NCL (BAHAMAS) LTD., et al.,

      Defendants.

_____/

### ORDER ON DEFENDANT'S MOTION FOR TAXATION OF COSTS

This Cause is before the Court on Defendants NCL (Bahamas) Ltd., d/b/a NCL, Norwegian Cruise Lines, NCL America, LLC's, (collectively, "NCL") Motion to Tax Costs. [ECF No. 235]. The Court has reviewed the motion, plaintiff Thomas Frasca's ("Frasca") response [ECF No. 242], NCL's reply [ECF No. 244], and the other pertinent portions of the record. As outlined below, NCL's Motion is **granted in part and denied in part.**

## I.    BACKGROUND

On February 17, 2012, Frasca filed this action against NCL after he slipped and fell on an NCL vessel. [ECF No. 1]. On January 31, 2014, NCL filed a motion for summary judgment. [ECF No. 137]. The Court granted the summary judgment motion and entered final judgment for NCL on April 9, 2014. [ECF Nos. 227; 228].

On May 12, 2014, NCL filed the instant motion to tax $17,245.60 in costs. [ECF No. 235]. Frasca opposes the motion. [ECF No. 240]. In his response, Frasca also requests the Court to either stay the execution of any costs judgment or to stay NCL's motion to tax costs pending his appeal of the underlying final judgment. NCL filed its reply on June 2, 2014. [ECF No. 244].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  For purposes of Rule 54(d)(1), a "prevailing party" is a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Utility Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002) (internal citation omitted).  In turn, 28 U.S.C. § 1920 provides that "[a] judge or clerk of any court" may tax as costs the following:

1) Fees of the clerk and marshal;
2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3) Fees and disbursements for printing and witnesses;
4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5) Docket fees under section 1923 of this title;
6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009). Nevertheless, despite this burden, a court is limited to taxing only those costs specifically authorized by statute. *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)). Moreover, the award of costs bears interest from the date of the original judgment. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994).

## III. DISCUSSION - COSTS

NCL is the prevailing party as the Court entered judgment in its favor. [ECF No. 228]. NCL originally sought $17,245.60 in costs, composed of subpoena costs, deposition costs, witness fees, and copying costs. [ECF No. 235]. After Frasca objected [ECF No. 240], NCL reduced the amount of costs it was seeking. [ECF No. 244].

### A. Subpoena Service Costs

Service of process fees paid to private process servers are taxable so long as the amount does not exceed the amount charged by the U.S. Marshal Service. *E.E.O.C.*, 213 F.3d at 624. The Marshal's fee for service of process was $55/hour during part of this litigation, but recently increased to $65/hour. 28 C.F.R. § 0.114(a)(3) (2012-13); *see also* 78 Fed. Reg. 59,817, 59,819 (Sept. 30, 2013).

NCL originally sought $2,411.00 for serving 26 subpoenas. [ECF No. 235, p. 5]. Frasca objected to 12 of the 26 subpoenas as unnecessary and lodged a general objection to NCL's subpoena rates because they were greater than the Marshal's rate. [ECF No. 240]. In response, NCL conceded the point as to its subpoena rates and stated that in accordance with the revised Marshal's rate, it was seeking $55.00 for subpoenas served before September 2013 and $65.00 for subpoenas served after September 2013. [ECF No. 244, p. 2]. As such, NCL is now seeking $1,561[1] in subpoena costs.

1. *The 14 Un-Objected-To Subpoenas*

The following chart illustrates the subpoenas Frasca did not object to and the corresponding agreed-to-rate the Court is awarding NCL for each subpoena.

| Person/Entity Served | Date Served | Amount Awarded |
|---|---|---|
| Records Custodian Maui Medical Center | 1/29/2013 | $55.00 |
| Records Custodian Dennis Williams, M.D. | 1/31/2013 | $55.00 |
| Records Custodian Christie Clinic | 1/31/2013 | $55.00 |
| Records Custodian Provena Covenant Medical Center | 1/31/2013 | $55.00 |
| Records Custodian Social Security Administration | 2/27/2013 | $55.00 |
| Records Custodian Department of Health & Human Services | 2/27/2013 | $55.00 |
| Records Custodian Quest Diagnostics | 10/8/2013 | $65.00 |
| Records Custodian David Paul Conner, M.D. | 10/16/2013 | $65.00 |
| Records Custodian Carle Foundation Hospital | 10/16/2013 | $65.00 |
| Records Custodian Karen L. Eisenmenger, M.D. | 10/16/2013 | $65.00 |
| Records Custodian Stuart King, M.D. | 10/16/2013 | $65.00 |

---

[1]     While NCL says it is seeking $1,590 in subpoena costs, it can only actually be seeking $1,561. This is because Dr. Wender's subpoena was only $36.00 (including rush fee), which is less than the $65.00 that NCL is seeking for the subpoena.

| | | |
|---|---|---|
| Records Custodian Apria Healthcare | 10/16/2013 | $65.00 |
| Pedro Giron, M.D. | 2/27/2013 | $55.00 |
| Chris Covington, M.D. | 9/9/2013 | $55.00 |
| **Total** | | **$830.00** |

### 2. *The 12 Challenged Subpoenas*

The 12 subpoenas Frasca objects to can be classified into four broad categories: the Christie Clinic subpoenas (8 subpoenas); the Swedish Covenant subpoena (1 subpoena); the ASC Recovery Service subpoena (1 subpoena); and the Frasca expert subpoenas (2 subpoenas).

### a. The Christie Clinic Subpoenas

NCL seeks to recover costs for the following Christie Clinic subpoenas.

| Person/Entity Served | Date Served | Amount Requested |
|---|---|---|
| Records Custodian Christie Clinic Department of Physical Therapy | 1/31/2013 | $55.00 |
| Records Custodian Presence Covenant Medical Center | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic at Provena Covenant | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic Department of Orthopedics | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic Department of Family Medicine | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic Department of Internal Medicine | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic Department of Gastroenterology | 10/16/2013 | $65.00 |
| Records Custodian Christie Clinic Convenient Care | 10/16/2013 | $65.00 |
| **Total** | | **$510.00** |

5

[ECF No. 235, pp. 4-5].

Frasca argues that these subpoena costs were unnecessary because all of the records for the Christie Clinic departments and facilities are located at one single repository. [ECF No. 240, p. 3]. To support this claim, Frasca attached the affidavit of his counsel's assistant who stated that she contacted these entities and discovered that their records are at one central repository. [ECF No. 240, pp. 16-17]. In addition, Frasca points out that NCL received no records from these subpoenas.

In its reply, NCL contends that in its experience some departments or sub-entities of clinics maintain their own individual records. Therefore, it contends that its "buckshot" approach in sending out subpoenas was necessary to make sure it had all of Frasca's medical records. [ECF No. 244, p. 3].

The Court does not find either party's arguments particularly persuasive. As to Frasca's arguments, his counsel's assistant's affidavit does not state **when** she became aware that the Christie Clinic records were stored in one location. Thus, it is unfair to saddle NCL's counsel with this knowledge before they issued their subpoenas. As to NCL's arguments, the Court finds their reliance on *Mull v. Trinity Yacht Sales & Chartering, LLC*, No. 07-21358-CIV, 2009 WL 4594965, at *1 (S.D. Fla. Dec. 1, 2009) to support their "buckshot" subpoena approach misplaced. In that case, there were 6 subpoenas -- not 26 subpoenas -- and they actually yielded evidence on plaintiff's

alleged injuries. *Id.* Here, none of the subpoenas yielded any information and it is not clear why NCL did not make the same call that Frasca's counsel's assistant did.

Consequently, the Court will exercise its discretion and grant in part and deny in part these requested costs. In particular, the Court will award NCL only $255.00 for the Christie Clinic subpoenas.

### b.   The Swedish Covenant Subpoena

NCL seeks $65.00 for the service of a subpoena on the records custodian of Swedish Covenant Hospital. Frasca argues that because he did not receive any treatment at Swedish Covenant Hospital, subpoenaing this facility was neither reasonable nor necessary. [ECF No. 240, p. 4]. In response, NCL argues that its counsel had a reasonable belief that Frasca may have been treated at this facility. [ECF No. 244, p. 4].  NCL, however, did not explain *why* its counsel believed that Frasca may have been treated there. Accordingly, the Court finds that NCL is not entitled to the cost of this subpoena.

### c.   The ASC Recovery Service Subpoena

ACS Recovery Service ("ACS") is the subrogation/reimbursement agent for Frasca's health insurer. [ECF No. 240, p. 4]. Frasca objects to this subpoena because he contends ACS's information consists of amounts paid by Frasca's health insurer for Frasca's treatment and that such information is prohibited from being introduced in this case under the federal collateral source rule. [*Id.*]. NCL argues that it needed ACS's

information because it may have introduced evidence as to the total amount actually paid for medical services in order to present an argument on whether Frasca's claimed medical expenses were reasonable and necessary. [ECF No. 244, p. 4]. It also argues that ACS's records would provide it with the most complete list of names and addresses of Frasca's medical providers, which it could use to subpoena Frasca's medical records. [*Id.* at p. 5].

Setting aside the collateral source issue, the Court finds persuasive NCL's rationale of subpoenaing ACS's records to obtain a complete list of Frasca's medical providers. As such, the Court awards NCL $55.00 for this subpoena.

### d.  Subpoenas to Frasca's Experts

Frasca opposes the $101.00 that NCL is seeking for the service of subpoenas on his experts, Dr. Richard Gill and Dr. Stephen Wender. [ECF No. 240, pp. 4-5]. Frasca contends that no subpoena was necessary because he would have voluntarily produced these experts. [*Id.*]. NCL contends that it needed to serve these experts to ensure it had recourse with the Court if they failed to bring the requested documents. [ECF No. 244].

The Court distinctly recalls that this case started off with counsel working together well and then counsel became less cooperative as the case progressed, perhaps as a result of a change in the specific defense attorney handling the case. As a result, the Court does not fault NCL for making sure that it followed the applicable rules to ensure it had recourse in the event any issue arose. However, the Court will not award NCL

the $18.00 rush fee it seeks for Dr. Wender's subpoena because it did not explain "why it was necessary to serve th[is] subpoena[] in an expedited fashion." *Spatz v. Microtel Inns & Suites Franchising, Inc.*, No. 11-60509-CIV, 2012 WL 1587663, at *3 (S.D. Fla. May 4, 2012). Accordingly, the Court will award NCL $83.00 for these two subpoenas.

### e.  Conclusion

In sum, the Court awards NCL a total $1,223.00 in subpoena-related costs, $338.00 less than the $1,561.00 requested.

### B.  Deposition Costs

NCL seeks $12,427.86 in deposition-related costs. [ECF No. 235, pp. 7-8]. In response, Frasca makes several inconsistent objections. In general, Frasca first objects to any deposition transcript rates greater than $0.90/page —the maximum rate he claims is allowed in this district. [ECF No. 240, p. 6]. But he only makes this objection to certain depositions, not all depositions. Second, he objects to the handling and delivery charges associated with only certain depositions. [*Id.* at pp. 6-9]. Third, he objects to any rough drafts, condensed, or mini-script/pdf deposition transcript charges for some, but not all, of the depositions. Fourth, he objects to all video synchronization charges. Fifth, Frasca objects to all photocopies of deposition exhibits that cost more than $0.10/page. Finally, Frasca makes specific objections to certain depositions.

1.   *Legal Standard*

The cost of a deposition transcript itself is generally recoverable under § 1920 as long as it was "necessarily obtained for use in the case." *Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012). Fees for expedited or condensed transcripts, rough drafts, compressed and mini script versions, and CD ROM's with ASCII are not reimbursable under § 1920, where such services are for the *convenience of counsel. Univ. of Miami v. Intuitive Surgical, Inc.*, No. 04-20409-CIV, 2007 WL 781912, at *1 (S.D. Fla. March 13, 2007); *see also Feinschreiber v. United States*, No. 01–3628–CIV, 2002 WL 31084156, at *2 (S.D. Fla. Aug. 12, 2002) (declining to award costs for ASCII and mini script).

2.   *Frasca's General Objections*

a.   <u>Deposition Transcript Rate and Deposition Transcript Copies</u>

Frasca first makes a generalized objection to any deposition transcript rate greater than $0.90/page -- the maximum rate he claims is allowed in this district. [ECF No. 240, p. 6]. In support of this $.90/page maximum limit, Frasca relies on a webpage printout of this district's transcript rate schedule. [ECF No. 240, p. 20]. He also objects to additional copies of deposition transcripts.

As to the maximum rate per page argument, Frasca notably omits the bottom of the webpage he relies on that has a specific disclaimer stating that it is not to be used as legal authority. *See* <u>http://www.flsd.uscourts.gov/?page_id=445</u> (last visited August 18,

10

2014). Second, the $0.90/page limit refers to *copies* of the original deposition transcript, not the costs of the original deposition transcript. And for most of the depositions, NCL is seeking the costs for original deposition transcripts, not copies.  Finally, Frasca has pointed to no legal authority that supports his maximum rate argument. Accordingly, the Court overrules Frasca's objection on this point.

As to deposition copies, there is a conflict in this circuit regarding whether copies, as opposed to originals, of deposition transcripts are taxable. *George v. Fla. Dep't of Corr.*, No. 07-80019-CIV, 2008 WL 2571348, at *6-7 (S.D. Fla. May 23, 2008) (Rosenbaum, J.). Courts will generally look to see whether the copy is necessary. To the extent that it is, the cost is recoverable. *Id.* For instance, a non-deposing party may recover the costs associated with obtaining a copy of a deposition transcript. *Id.*

Here, Frasca objected to some of NCL's deposition copies but not others. For example, Frasca objected to NCL receiving a copy of Mr. Conway's deposition transcript, but not to NCL receiving copies of the Frasca or Dr. Gill deposition transcripts. Because NCL has demonstrated that all these depositions were reasonably necessary for this case and Frasca has not explained why he objects to some but not all of these costs, and there is some case law to support these requested costs, the Court rejects Frasca's inconsistent and unexplained argument and awards NCL these costs. *See Monelus*, 609 F. Supp. 2d at 1338-39 (awarding deposition copy costs).

b.   <u>Handling and Delivery Charges</u>

Frasca objects to the handling and delivery charges associated with several depositions. As then-Magistrate Judge Robin Rosenbaum (now Appellate Judge) has noted, there is a split in the Eleventh Circuit has to whether handling and delivery charges are recoverable. *See Monelus,* 609 F. Supp. 2d at 1338-39. NCL did not respond and explain why it should be entitled to recover these costs. Based on these circumstances, the Court does not award NCL the handling and delivery charges it seeks. *Cf. Monelus*, 609 F. Supp. 2d at 1338-39 (awarding prevailing party handling and delivery charges where the other party **did not object**).

c.   <u>Rough Drafts, Condensed Transcripts, or Mini Scripts</u>

Fees for condensed transcripts, rough drafts, compressed and mini script versions, and CD ROM's with ASCII are not reimbursable under § 1920, where such services are for the convenience of counsel. As to the mini script, condensed transcripts, and electronic scanned pdf transcripts, the Court does not award NCL these costs because NCL has not shown that they were not incurred for the convenience of counsel.

As to the rough drafts of transcripts, NCL is seeking to recover for the rough drafts associated with the depositions of Frasca, Frasca's expert (Dr. Gill), and NCL's Rule 30(b)(6) representative, Jane Kilgour. [ECF No. 235-2, pp. 10, 12, 13]. As to Ms. Kilgour, NCL is also seeking rush costs for her deposition transcript. NCL argues that the rough drafts and rush fees for these depositions were necessary.

As to Ms. Kilgour's deposition, the Court agrees with Frasca that NCL should not be able to recover these costs. While Ms. Kilgour's deposition was conducted two days before the summary judgment filing deadline and, therefore, NCL needed her deposition transcript, that was not a circumstance of Frasca's making. Indeed, Frasca's counsel was trying to schedule NCL's 30(b)(6) deposition as far back as November 20, 2013 -- more than two months before it actually happened. [ECF No. 240, pp. 24-26]. As such, the Court is not awarding NCL for the rough draft of Ms. Kilgour's deposition and is reducing the costs of Ms. Kilgour's "rush" deposition transcript in half.

The Court, however, will award NCL the rough draft deposition transcripts it seeks for Frasca and Dr. Gill's depositions. As to Frasca's deposition, NCL argues that it needed the rough draft transcript so that it could use it at the mediation, the very next day. As to Dr. Gill, his deposition was conducted 10 days before the summary judgment deadline and NCL argues it needed the rough draft deposition transcript so that it could prepare its summary judgment motion. The Court finds these reasons sufficient to justify the rough draft transcript costs for these depositions. *Responsible Me, Inc. v. Evenflo Co., Inc.*, No. 06-61736-CIV, 2009 WL 528247, at *8 (S.D. Fla. Mar. 2, 2009) (defendants entitled to reimbursement for expedited deposition transcripts to file motions *in limine* before court deadline).

d.  <u>Video Synchronization Charges</u>

Frasca challenges the cost of video synchronization, but not the cost of the videographer. [ECF No. 240, p. 11]. The cost of video synchronization is *generally* not recoverable under § 1920. *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 5446412, at *3 (S.D. Fla. Sept. 28, 2013).  Some courts have found the costs of video synchronization taxable because it assists the jury and the Court and conserves time. *See  Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2011 WL 2535258, at *12-14 (S.D. Fla. June 27, 2011) (awarding video synchronization costs); *accord Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1151 (N.D. Cal. 2010); *but see Powell v. The Home Depot, U.S.A., Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *13 (S.D. Fla. Sept. 14, 2010), *report and recommendation adopted*, No. 07-80435-CIV, 2010 WL 4102933 (S.D. Fla. Oct. 18, 2010) (denying costs for video synchronization).

In this case, although there was no trial, the Court agrees with Magistrate Judge O'Sullivan that video synchronization helps the jury and the Court and conserves time. Therefore, the Court finds that it was reasonable for NCL to incur these costs and will award NCL for these costs. *Managed Care Solutions, Inc.,* 2011 WL 2535258, at *12-14 (O'Sullivan, J.) (awarding video synchronization costs); *see also Nat'l Bancard Corp. v. Visa, U.S.A., Inc.*, 112 F.R.D. 62, 66 (S.D. Fla. 1986) (cost of deposition not used at trial may be taxable).

e.   Deposition Exhibit Photocopies

Frasca objects to the rate for deposition exhibit copies. [ECF No. 240, p. 6].  There is a dispute within this circuit as to whether copies of deposition exhibits are taxable. *George*, 2008 WL 2571348, at *6. If the deposition exhibits were not merely for the convenience of counsel, then they may be taxed. *Rodriguez*, 862 F. Supp. 2d at 1320.

Here, Frasca does not dispute that NCL has sufficiently demonstrated that these deposition exhibits were not merely for the convenience of counsel. Rather, he argues that the copy rate should be reduced. To be sure, while Frasca cites no case law to support his position, the Court has found some decisions where courts have exercised their discretion to reduce the deposition exhibit copy rates.  *See, e.g., Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, No. 6:08-CV-2165-ORL-28, 2011 WL 5358548, at *4-5 (M.D. Fla. Oct. 17, 2011), *report and recommendation adopted,* No. 6:08-CV-2165-ORL-28, 2011 WL 5358668 (M.D. Fla. Nov. 7, 2011) (reducing rate of deposition exhibit copies). The Court will not exercise its discretion here and will not reduce these costs for two reasons.

First, Frasca has pointed to no legal authority that holds that copies of deposition exhibits are bound by the reasonable copy rate in § 1920(4) (copy costs). Moreover, the Court can find no binding Eleventh Circuit case which limits the costs of copies for deposition exhibits under § 1920(2) (deposition costs). Indeed, even in *Competitor Liaison*

15

*Bureau, Inc.,* that court exercised its discretion to reduce the copy rates and did not cite to any binding legal authority. 2011 WL 5358548, at *4-5.

Second, from a pragmatic perspective, NCL does not control the rate the court reporter charges for deposition exhibit copies. In the Court's experience, unlike the rate for their own copies, the rate charged for deposition exhibits is not controlled by the parties. Thus, NCL, like Frasca, was left to either pay the court reporter's invoice for the deposition exhibits or not receive them at all.

       3.    *Frasca's Specific Deposition Objections*

         a.  <u>September 18, 2013 Depositions of the Stanners and Barbara Frasca</u>

Frasca objects to 2 hours of the court reporter's attendance fee for the September 18, 2013 depositions of Steve and Tish Stanner (Frasca's friends) and Barbara Frasca (Frasca's wife).  The record shows that the depositions ended at 7:35 p.m. [ECF No. 240, p. 22]. The court reporter, however, charged an attendance fee for the hours of 8:00 p.m. to 10:00 p.m. [ECF No. 235-2, p. 8].  Accordingly, the Court will disallow this 2 hours. If NCL paid this unnecessary fee, then Frasca should not be responsible for his opponent's ill-advised decision to pay an incorrect invoice.

         b.  <u>The Second Deposition of Dr. Giron</u>

The first deposition of Dr. Giron took place in February 2013. *At Frasca's request*, the Court ordered that this deposition could not be a trial deposition. [ECF Nos. 43; 49]. As such, NCL had to retake Dr. Giron's deposition for trial purposes. Frasca objects to

this second trial deposition because he contends no new information was revealed at that deposition. But it is hardly surprising that no new information would be revealed at this deposition **because it was a trial deposition**. *See Charles v. Wade,* 665 F.2d 661 (5th Cir. 1982) (explaining that in a trial deposition, a party knows what a non-party witness will say, because the party has deposed or interviewed the witness earlier and is only seeking to preserve his testimony for trial). Accordingly, the Court rejects Frasca's argument to deny all of NCL's costs associated with Dr. Giron's deposition.

c. <u>Dr. El Sergany's Deposition</u>

Frasca objects to the following costs associated with Dr. El Sergany's deposition: the second DVD copy of the video deposition ($50.00); airfare, car, and parking costs ($185.00); and Federal Express Delivery ($20.00). [ECF No. 240, p. 9]. In its reply, NCL does not explain why it would be entitled to these costs, which, on their face, do not appear to be taxable under § 1920. Accordingly, the Court does not award NCL these $255.00 in costs associated with Dr. El Sergany's deposition.

4. *Conclusion*

In sum, based on the Court's rulings above, the Court is awarding NCL the following deposition-related costs:

| Deposition Description | Amount Requested | Amount Awarded |
|---|---|---|
| Depositions of David Corbett and Dr. Pedro Giron [ECF No. 235-2, p. 4] | $893.56 | $828.56 |
| Deposition of James Conway [ECF No. 235-2, p. 5] | $530.20 | $465.20 |

| | | |
|---|---|---|
| Videotape Deposition of Dr. Chris Covington [ECF No. 235-2, p. 7] | $490.00 | $490.00 |
| Deposition of Dr. Chris Covington [ECF No. 235-2, p. 9] | $382.15 | $337.15 |
| Depositions of Barbara Frasca and Steve and Tish Stanner [ECF No. 235-2, p. 8] | $1,539.55 | $1,369.55 |
| Deposition of Thomas Frasca [ECF No. 235-2, p. 10] | $1,637.70 | $1,572.70 |
| Video Deposition of Dr. Ali El Sergany [ECF No. 235-2, p. 11] | $1,077.59 | $822.29 |
| Deposition of Dr. Richard Gill [ECF No. 235-2, p. 12] | $1,321.25 | $1,256.25 |
| Deposition of Jane Kilgour [ECF No. 235-2, p. 13] | $1,702.86 | $644.68 |
| Deposition of Dr. Ali El Sergany [ECF No. 235-2, p. 14] | $397.30 | $332.30 |
| Trial Video Deposition of Dr. Pedro Giron [ECF No. 235-2, p. 15] | $486.40 | $421.40 |
| Deposition of Dr. Stephen Wender [ECF No. 235-2, p. 16] | $790.60 | $726.10 |
| Video Synchronization Costs [ECF No. 235-2, pp. 6, 17-19] | $1178.70 | $1,170.00 |
| **Total** | $12,427.86 | **$10,436.18** |

### C.  **Witness Fees**

"A witness who appears before a federal court 'or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States' is entitled to fees and allowances, including 'an attendance fee of $40 per day for each day's attendance.'" *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 463 (11th Cir. 1996) (quoting 28 U.S.C. § 1821(a)(1) & (b)). "Section 1920 of title 28 provides that '[a] judge or clerk of any court of the United States may tax as costs . . . fees and disbursements for printing and witnesses.'" *Id.* (quoting 28 U.S.C. § 1920(3)).

Here, NCL is seeking the $40.00 witness fee it paid to Dr. Wender. [ECF No. 235, p. 8]. Frasca does not object to this cost and the amount NCL seeks is permitted by statute. Accordingly, the Court awards NCL this $40.00 witness fee cost.

**D.  <u>Copying Costs</u>**

The costs of printing and photocopies are recoverable if "the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *E.E.O.C.*, 213 F.3d at 623. The moving party must present evidence "regarding the documents copied including their use or intended use." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The moving party need not, however, specifically explain the need for, or use of, each particular copy. *Powell*, 2010 WL 4116488, at *17, *report and recommendation adopted,* 2010 WL 4102933. Costs for copies made merely for counsel's convenience should not be awarded. *Monelus*, 609 F. Supp. 2d at 1335-36.

NCL is seeking to recover $2,366.74 in copy costs. [ECF No. 235, p. 9].  Frasca objects to two categories of copies. First, Frasca objects to the $90.50 to photocopy ACS's records on the same basis he objects to ACS's subpoena. As the Court has overruled that subpoena objection, the Court will allow NCL to recover this copying cost.

Next, Frasca opposes NCL's in-house copy costs of $2,125.60 because he contends the in-house rate was greater than $0.10/page and because he contends that

NCL may only recover copy costs for items served on opposing counsel or filed with the Court. [ECF No. 240, pp. 12-13].

As to the in-house per page rate, NCL's exhibit clearly shows that the rate is $0.10/page. [ECF No. 235-1, p. 27]. Thus, that objection is not well taken and will be rejected. Moreover, the Court finds that NCL's in-house rate of $0.10 per page is reasonable in this district. *Monelus*, 609 F. Supp. 2d at 1336 (rate of $0.10 to $0.14 per page is reasonable); *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 652 (S.D. Fla. 2007) ($0.10 per page is reasonable in this district).

Second, based on NCL's counsel's sworn representation [ECF No. 235, pp. 3-4], these photocopies appear to have been made for the purposes of corresponding with opposing counsel, filing documents with the court, responding to and reviewing discovery, creating copies of medical records, copying documents utilized in depositions, etc. As such, these copying costs are recoverable. *See Beach-Mathura v. Am. Airlines, Inc.*, No. 10-12066, 2014 WL 3036652, at *2-3 (11th Cir. July 7, 2014) (copies attributable to discovery are recoverable); *Monelus*, 609 F. Supp. 2d at 1336 (photocopies for purpose of correspondence with opposing counsel and filing documents with court recoverable); *Florida Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs*, 386 F. Supp. 2d 1266, 1270 (S.D. Fla. 2005) ("[p]hotocopies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are all recoverable").

Accordingly, the Court will award NCL the $2,366.74 in copy costs it seeks.

## IV.   DISCUSSION – REQUEST TO STAY

In the last sentence of his response, Frasca requests that the Court stay execution of any costs judgment or deny NCL's motion without prejudice, pending his appeal of the underlying judgment. The Court rejects Frasca's request.

From a procedural viewpoint, a response is not a proper filing to request relief from the Court. If Frasca wanted relief from the Court, then he should have filed an appropriate motion. On this basis alone, the Court could deny Frasca's request. The Court, however, will consider the merits of Frasca's request.

First, under Rule 62(d), an appellant may obtain a stay of a money judgment by posting a supersedeas bond. There are two exceptions to this general rule. *Avirgan v. Hull,* 125 F.R.D. 185, 186 (S.D. Fla. 1989), *aff'd,* 932 F.2d 1572 (11th Cir. 1991), *cert. denied sub nom., Christie Institute v. Hull,* 502 U.S. 1048 (1992). One exception is if the moving party meets its burden to "objectively demonstrate a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of appeal. . . ." *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir. 1979). The other exception is where posting the bond would put the party's other creditors in undue jeopardy. *Avirgan,* 125 F.R.D. at 186 (internal citations omitted). The decision as to whether the moving party has met its burden is left to the trial court's

discretion. *See Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755 (D.C. Cir. 1980).

Here, Frasca has not even alleged that either exception applies in his case. Moreover, there is nothing in the record to indicate that these two exceptions would apply to Frasca. As such, there is no legal basis to stay the execution of a money judgment without Frasca posting the appropriate bond.

Second, it is well established in this district that a pending appeal does not constitute a sufficient legal basis to stay a motion to tax costs or the entry of a costs judgment. *See, e.g., Hartford Accident & Indem. Co. v. Crum & Forster Specialty*, No. 10-24590-CIV, 2012 WL 3291986, at *1 (S.D. Fla. Aug. 13, 2012); *see also Pretka v. Kolter City Plaza II Inc.*, No. 09-80706-CIV, 2013 WL 7219294 (S.D. Fla. Sept. 11, 2013) (denying plaintiff's request to stay resolution of award for attorney's fees pending appeal) (citing *King Cole Condo. Ass'n v. QBE Ins. Corp.*, No. 08–23350–CIV, 2010 WL 3212091, at *1 (S.D. Fla. Aug. 12, 2010) ("The Court's regular practice . . . is not to stay matters collateral to a final judgment, principally involving fees or costs issues, to avoid piecemeal appeals to the Eleventh Circuit.")).

Consequently, the Court denies Frasca's requests to stay the execution of the costs judgment or to stay NCL's motion to tax costs. If Frasca wants to stay execution of the costs judgment pending his appeal, then he may file the appropriate bond.

## V.    CONCLUSION

For the reasons stated above, NCL shall recover $14,065.92 in costs against

Frasca, to bear interest from the date of the final judgment, April 9, 2014.

For which sum let execution issue.

**DONE and ORDERED**, in Chambers, in Miami, Florida August 25, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All Counsel of Record